UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,      )
                               )
           Plaintiff,          )
                               )
v.                             )        No.:   3:18-CR-178-TAV-HBG-1
                               )
TYWAN MONTREASE SYKES,         )
                               )
           Defendant.          )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge H. Bruce Guyton on October 5, 2020 [Doc. 63]. The R&R addresses defendant's motions to suppress [Docs. 47, 48]. The government responded to each of these motions [Docs. 49, 50], and Judge Guyton held a hearing on the motions on August 18, 2020 [Doc. 57]. Judge Guyton then issued the R&R [Doc. 63], recommending that the Court deny each of defendant's motions to suppress. Defendant has filed objections to the R&R [Doc. 64], the government has responded [Doc. 65], and the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow, the Court will **OVERRULE** the defendant's objections [Doc. 64], **ACCEPT** the R&R in whole [Doc. 63], and **DENY** defendant's motions to suppress [Docs. 47, 48].

## I. Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion. Moreover, the Court notes that the parties do not object to the factual basis stated in the magistrate judge's R&R; therefore, the Court will adopt the following facts from the R&R [Doc. 63].

At the motion hearing before Judge Guyton, Officer John Williams of the Knoxville Police Department's Internet Crimes Against Children Task Force ("KPD-ICAC") testified that KPD-ICAC reviewed a Priority 1 CyberTip from the National Center for Missing and Exploited Children ("NCMEC") on October 16, 2018. The CyberTip included information that Facebook submitted, indicating that defendant was enticing a minor female to produce visual depictions of herself, and that it was believed that defendant and the minor female had previously met and engaged in sexual activity [Doc. 63, pp. 4–5; Doc. 59, pp. 9–10]. A CyberTip is submitted by an electronic service provider ("ESP") when they become aware of criminal activity, such as enticement or any crime that involves the sexual exploitation of children, and the ESP submits that information to NCMEC [Doc 63, p. 5; Doc. 59, p. 10]. NCMEC then attempts to determine the general location of the crime and informs the appropriate law enforcement agency [*Id.*].

Officer Williams testified that, on October 16, 2018, after reviewing the relevant CyberTip, he was able to identify the minor female and contact the Department of Children's Services [Doc. 63, p. 7; Doc. 59, p. 22]. Law enforcement then contacted the victim and spoke to her with permission from her legal guardian [Doc. 63, p. 7; Doc. 59,

2

pp. 23–24]. The victim originally denied knowing anyone with defendant's name, but eventually admitted that she had been in communication with, and had sex with, defendant [Doc. 63, pp. 7–8; Doc. 59, p. 25]. The victim also admitted that she had taken images of a sexual nature of herself at defendant's request [Doc. 63, p. 7; Doc. 59, pp. 25–26].

On October 17, 2018, Officer Williams began preparing a federal arrest warrant for defendant, and the next day, defendant was arrested by the United States Marshals Service [Doc. 63, p. 8; Doc. 59, pp. 26–27]. Upon his arrest, defendant was transported to the Blount County Detention Center, and his phone was taken to be placed in his property upon his arrest at the facility [Doc. 63, p. 8; Doc. 59, p. 27]. Defendant consented to an interview with Officer Williams [*Id.*]. In that interview, defendant denied sending any messages to the victim and denied knowing the victim [Doc. 63, p. 8; Doc. 59, pp. 29–30].

After the interview, Officer Williams requested defendant's cell phone from the Blount County Detention Center for evidence and obtained possession of defendant's LG cell phone [Doc. 63, p. 8; Doc. 59, p. 30]. Officer Williams was aware that detainees are not allowed to have a cell phone in the Blount County Detention Center [Doc. 63, p. 8; Doc. 59, p. 28]. Officer Williams completed a KPD property inventory report form, left the receipt to be placed in defendant's property at the Blount County Detention Center, and placed the phone in a Faraday box at the KPD-ICAC office in order to ensure preservation of the data on the phone [Doc. 63, pp. 8–9; Doc. 59, pp. 30–31].

Thereafter, until his completion of the search warrant affidavit on November 27, 2018, Officer Williams spent most days investigating this matter, including interviewing

3

the victim and family members, discussing the case with federal officials, preparing warrants for and reviewing messages on defendant's and the victim's Facebook pages, subpoenaing cell tower information, interviewing defendant's ex-girlfriend, and assisting in interviews of two other potential victims [Doc. 63, pp. 4–15]. Officer Williams completed the affidavit for the search warrant application to search defendant's cell phone on November 27, 2018, and the warrant was signed on November 29, 2018 [Doc. 63, pp. 11–12; Doc. 59, pp. 44–45]. The phone remained in the Faraday box from October 18, 2018, until November 29, 2018, when a search warrant for the phone was obtained [Doc. 63, pp. 12, 14; Doc. 59, pp. 45, 60].[1]

## II.     Standard of Review

The Court reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the Court considers the R&R, defendant's motions to suppress, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

## III.    Analysis

Defendant raises three objections to the magistrate judge's R&R. Specifically, he objects to (1) the magistrate judge's finding that Facebook was not a government agent;

---

[1]  The R&R appears to contain a typographical error indicating that defendant's phone was kept in the Faraday box from October to November of 2020, rather than 2018 [Doc. 63, p. 14]. However, the transcript of the suppression hearing makes clear that the relevant dates occurred in 2018 [*See* Doc. 59].

(2) the magistrate judge's discussion of the private search doctrine; and (3) the magistrate judge's finding that the delay in obtaining a search warrant for defendant's phone was not unreasonable [Doc. 64, pp. 5–7].

### A.    Whether Facebook Acted as a Government Agent

In his first motion to suppress, defendant argued that: (1) NCMEC is a government entity because federal statutes mandate its reporting to law enforcement; and (2) Facebook improperly seized his Facebook messages while acting as an agent of NCMEC, a government entity [Doc. 63, p. 15].  For purposes of his analysis, Judge Guyton assumed, without deciding, that NCMEC was a government entity [*Id*. at 16–17].  However, applying the *Lambert*[2] test for determining whether a private party acts as a government agent, Judge Guyton concluded that law enforcement did not instigate, encourage, or participate in the search, and Facebook did not engage in the search with the intent of assisting police, and thus, Facebook was not acting as a government agent [*Id*. at 17–25].  Judge Guyton noted that, while Facebook is statutorily required to report apparent child pornography to NCMEC, the statute specifically indicates that it does not require an ESP to search its platform for child pornography [*Id*. at 18–19].  Judge Guyton also concluded that Facebook had an independent business purpose for keeping its platform safe and free from harmful conduct, which was separate from the government's interest in investigation and prosecution [*Id*. at 22–24].

---

[2]  *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985).

Defendant objects to the magistrate judge's conclusion that Facebook is not a government agent, pointing out that many of the cases cited by Judge Guyton were decided before the Tenth Circuit's decision in *Ackerman*,[3] which, defendant contends, changes the analysis, based on the determination that NCMEC is now a government entity [Doc. 64, pp. 3–5]. Accordingly, defendant contends that the appropriate standard is not the *Lambert* test but, rather, simple agency law [*Id.* at 5–6]. Defendant argues that NCMEC does not have the ability to search platforms like Facebook, and thus, when Facebook discovers child pornography and forwards it to NCMEC, it is engaging in a relationship where it acts for another [*Id.* at 6].

As an initial matter, the Court need not address whether NCMEC is a governmental entity, since the R&R assumed, without deciding that NCMEC was a governmental entity, as argued by defendant, and based its analysis on that presumption. [*See* Doc. 63, pp. 16–17]. No party has specifically objected to the magistrate judge's presumption that NCMEC is a governmental entity, and, thus, the Court need not specifically address that issue. The Court notes, however, that defendant's objections contend that the magistrate judge's analysis of whether Facebook was acting as a government agent is incorrect if NCMEC is a governmental entity. Accordingly, in addressing defendant's objections, the Court, like

---

[3] *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016) (holding that NCMEC is a governmental entity).

6

the magistrate judge, will assume, without deciding, that NCMEC is a governmental entity.[4]

"[T]he Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or knowledge of any governmental official."  *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985).  A person or entity is not deemed a police agent "merely because there was some antecedent contact" between the person or entity and the police.  *Id.*  Instead, for an individual or entity to be deemed a police agent, for purposes of the Fourth Amendment: (1) "the police must have instigated, encouraged or participated in the search," and (2) the individual or entity "must have engaged in the search with the intent of assisting the police in their investigative efforts."  *Id.*  In *Lambert*, the Sixth Circuit first developed this test for determining whether a private individual, who searched a defendant's home and brought items she located to the Federal Bureau of Investigation ("FBI"), acted as an agent of the FBI, such that the Fourth Amendment's prohibition of unreasonable searches and seizures would apply.  *Id.*

After Judge Guyton issued his R&R, applying the *Lambert* test, the Sixth Circuit addressed a nearly identical situation to the one presented here, and applied three separate tests to determine that the ESP was not an agent of the government.  In *United States v. Miller*, 982 F.3d 412 (6th Cir. 2020), Google used a hash value searching technology to

---

[4]  The Court notes that, just last month, the Sixth Circuit acknowledged the *Ackerman* Court's decision that NCMEC is a governmental entity but declined to address the issue itself.  *See United States v. Miller*, 982 F.3d 412, 426 (6th Cir. 2020).

determine that two files attached to an email, sent from one of its Gmail users, had hash values matching images in Google's child-pornography repository. 982 F.3d at 417, 420. Google then sent an automated CyberTipline Report to NCMEC, as was required by law, after discovering potential child pornography on its platform. *Id*. at 419–20. Google provided two IP addresses associated with the Gmail account. *Id*. at 420. Once NCMEC received the report, it performed a search for the IP addresses that indicated they were located in Fort Mitchell, Kentucky, and identified the internet service provider. *Id*. NCMEC also identified a social media account for "Bill M." that was associated with the Gmail account. *Id*. NCMEC then sent the report to the Kentucky State Police who forwarded it to the police department in Kenton County, Kentucky. *Id*. Thereafter, Detective Aaron Schihl of the Kenton County Police Department reviewed the report, confirmed that the files showed prepubescent children engaged in sex acts, and began an investigation which ultimately led him to the defendant. *Id*. at 420–21.

Miller argued that Google's hash value matching search violated the Fourth Amendment. *Id*. at 421. The Sixth Circuit noted that this argument raised the question: "When should a private party's actions be 'fairly attributable' to the government and trigger the Constitution's protections?" *Id*. at 422. The court stated that the Supreme Court has adopted "a fact-bound approach to this attribution question, one that uses different factors or tests in different contexts," and identified three different tests: (1) a "function" test, that asks whether a private party performs a public function; (2) a "compulsion" test, that asks whether the government compelled a private party's action; and (3) a "nexus" test, that

asks whether a private party cooperated with the government. *Id*. at 422 (internal quotation marks omitted).

The Sixth Circuit first looked at the "function" test, and noted that some functions qualify as "government" functions no matter who performs them. *Id*. at 423. However, the court cautioned that this test "covers only those limited activities—for example, running a city—that have 'traditionally *and* exclusively' been performed by the government." *Id*. (quoting *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 341 (6th Cir. 2006)). The court acknowledged that the investigation of a crime has long been performed by the government but noted that it has also long been performed by private parties protecting their property. *Id*. Accordingly, the court concluded that Google's hash value matching search did not satisfy the "function" test. *Id*.

Next, looking at the "compulsion" test, the Sixth Circuit stated that a private party's "action might qualify as a government act if the government 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice in law must be deemed to be that of the' government." *Id*. (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). However, the court noted that "private action does not become government action merely because the government authorizes or acquiesces in it" and "[e]ven extensive regulation of a private party will not turn its every action into government action." *Id*. at 424. The court found that defendant had cited no law that compels or encourages Google to operate its hash value searching system, and, instead, noted that section 2258A(f) of Title 18 specifically disclaims any such mandate. *Id*. The court noted

9

that Miller had pointed to federal law requiring ESPs to report to NCMEC when they become aware of child pornography. *Id.* (citing 18 U.S.C. § 2258A(a)). However, the court rejected this argument, concluding that the statute "compels providers only to *report* child pornography that they know of; it does not compel them to *search* for child pornography of which they are unaware." *Id.* (emphasis in original). The court compared the reporting requirement to legal reporting requirements for teachers or doctors to report child abuse, noting that, in that context, the reporting mandates do not transform private parties into government actors. *Id.* Thus, the court concluded that Miller had not shown that the statutory reporting duty in section 2258A(a) turns private parties into public actors whenever they do something other than disclose a crime, such as voluntarily investigate it. *Id.* at 425.

Finally, the court turned to the "nexus" test, stating that private action may be attributable to the government when a sufficiently close nexus exists between the private party and the government actors. *Id.* Within this test, the Sixth Circuit appears to have applied the *Lambert* test, stating that two elements are relevant: (1) the private party's intent in undertaking the search; and (2) the government's acquiescence to the search. *Id.* As to Google's intent, the court found that, rather than intending to act as an agent of the police, Google "sought to rid its virtual spaces of criminal activity for the same reason that shopkeepers have sought to rid their physical spaces of criminal activity: to protect their businesses." *Id.* As to government acquiescence to Google's search, the court noted that Miller provided no evidence that law enforcement influenced Google's decision to scan

10

the relevant files, and police only became involved in the matter after Google performed the scan and uncovered the crime. *Id.* Accordingly, because Miller had shown neither that Google's intent in searching was to assist law enforcement nor that police encouraged or acquiesced in Google's search, he had not met the "nexus" test of establishing that Google was acting as an agent of the government. *Id.*

Here, the Court is presented with a nearly identical factual scenario, involving Facebook's use of its own hash value searching technology and/or a similar proprietary process for screening for child exploitation material [Doc. 59, pp. 11, 67]. As Miller argued with regard to Google, defendant argues that Facebook, in conducting such search for child exploitation material, acted as an agent of the government. However, for the same reasons that the Sixth Circuit found that Google was not a government agent in *Miller*, the Court finds that Facebook was not acting as an agent of the government in this case.

First, defendant has not established that Facebook was performing a function that is traditionally and exclusively performed by the government when it searched its platform for child exploitation material. *See Miller*, 928 F.3d at 423. As the Sixth Circuit stated, although investigation of criminal activity has long been performed by the government, it has not been an *exclusive* function of the government, as private parties have traditionally also performed this function, for the purpose of protecting their own property. *See id.* It does not appear that the function of Facebook's search of its platform for child exploitation material differs in any meaningful respect from Google's search of its Gmail platform at

11

issue in *Miller*. Accordingly, for the same reasons that the Sixth Circuit found that Miller had not established government attribution under the "function" test, the Court likewise finds that defendant has not established government attribution under this test.

Second, defendant has not shown that the government exercised coercive power or provided significant encouragement to Facebook with regard to searching its platform for child exploitative material, such that Facebook's decision to search could be deemed a decision of the government. *See id*. Defendant appears to raise the same argument that Miller raised, namely, that the mandatory reporting requirement in section 2258A(a) of Title 18, transformed Facebook's search into a government action, because Facebook was required to report any child pornography it uncovered in any search of its platform [Doc. 64, pp. 3–7]. However, the Sixth Circuit explicitly rejected this argument, concluding that section 2258A(a) only compels ESPs to report child pornography, but does not compel them to search for child pornography. *Miller*, 928 F.3d at 424.

Defendant seems to contend that because (1) Facebook could not report child exploitation material if it did not search for it; and (2) Facebook has created the mechanism to search for, and then report, child exploitation material on its platform, Facebook acts as an agent of the government under section 2258A when it searches its platform for child exploitation material [Doc. 64, pp. 6–7]. But the fact that section 2258A compels Facebook to report child exploitation material of which it becomes aware has no bearing on whether Facebook was compelled by the government to search its platform for child exploitation

12

material. There is simply no basis for concluding that Facebook becomes a government agent by searching its platform for harmful conduct, merely because it is compelled by law to report some forms of harmful conduct, once discovered. As the Sixth Circuit held, the reporting requirement in section 2258A, standing alone, is insufficient to establish that an ESP's search of its platform for child exploitation material is attributable to the government under the "compulsion" test. *See Miller*, 928 F.3d at 424–25. Because defendant has pointed to no other evidence that Facebook was compelled by the government to search for child pornography, the Court finds that he has not met his burden of establishing government attribution under the "compulsion" test.

Finally, defendant has not shown a sufficiently close nexus between Facebook and the government with regard to the search at issue. As noted previously, the "nexus" test adopted by the Sixth Circuit in *Miller* appears to be a restatement of the *Lambert* test that Judge Guyton applied in the R&R [Doc. 63, pp. 23–25]. *See* 928 F.3d at 425. Notably, defendant has not objected to Judge Guyton's analysis under *Lambert*, but merely argues that the *Lambert* test should not have been applied [Doc. 64, pp. 5–6]. Such argument is clearly foreclosed by the Sixth Circuit's *Miller* decision. Nevertheless, for the sake of completeness, the Court will review *de novo* the magistrate judge's analysis under the *Lambert* test, as now encompassed by the "nexus" test.

13

As to Facebook's intent in undertaking the search at issue, a Declaration from Raquel Morgan,[5] a custodian of records at Facebook, indicates that Facebook has an independent business purpose in keeping its platform safe and free from harmful content and conduct, including the sexual exploitation of children [Doc. 50-1, p. 1]. In *Miller*, the Sixth Circuit acknowledged that Google similarly had an independent business purposes in "rid[ding] its virtual spaces of criminal activity," and, thus, Google's intent in performing the search at issue was for that independent business purpose. 928 F.3d at 425. Likewise, here, the Court finds that Facebook had an independent business purpose in conducting the search for child sexual exploitation materials. Facebook clearly has an independent business purpose in keeping its platform safe and free from harmful conduct, to keep customers using the platform. Accordingly, defendant has not shown that Facebook's intent in undertaking the search was so entwined with law enforcement that the search activity should be attributed to law enforcement. As to law enforcement's acquiescence in Facebook's search, as in *Miller*, defendant has provided no evidence that law enforcement influenced Facebook's decision to search, and law enforcement only became involved in this matter after Facebook conducted the search and reported the

---

[5] The Court notes that defendant raises an objection to the consideration of this Declaration in his objections to the R&R [Doc. 64, p. 6 n.3]. However, even if the Court were to exclude the Declaration from consideration, Defendant has not met his burden of showing that Facebook's intent in conducting the search was to assist law enforcement, rather than for some independent business purpose. *See Miller*, 982 F.3d at 425 (indicating that defendant bears the burden in establishing both prongs of the "nexus" test). Moreover, even if defendant could establish the first prong of the "nexus" test, as discussed, he has not established the second prong of the test.

criminal activity it uncovered. Such is insufficient to establish government acquiescence. *See id*.

Accordingly, in light of the Sixth Circuit's recent decision in *Miller*, the Court finds that Facebook was not acting as a government agent when it conducted the search of its platform that uncovered evidence leading to the initiation of this criminal case. Thus, defendant's objection to the magistrate judge's conclusion that Facebook was not acting as an agent of the government is **OVERRULED**.

## B.    Whether the Private Search Doctrine Applies

In the R&R, Judge Guyton noted that defendant raised the private search doctrine in his first motion to suppress but did not address it in his post-hearing brief [Doc. 63, p. 26]. Judge Guyton nevertheless concluded that law enforcement's actions did not exceed the scope of the prior, private search by Facebook [*Id*. at 25]. Thus, Judge Guyton concluded that the warrant for defendant's cell phone was not tainted by any initial unreasonable search [*Id*. at 28].

Defendant objects to the magistrate judge's finding regarding the private search doctrine, arguing that the doctrine is inapplicable because Facebook conducted the search as an agent of a government entity [Doc. 64, p. 7]. As discussed at length above, based on binding Sixth Circuit precedent, the Court rejects defendant's argument that Facebook was acting as an agent of the government when it conducted the search that uncovered the child exploitation material here. Because the magistrate judge was correct in finding that Facebook was not acting as an agent of the government, the magistrate judge appropriately

addressed the private search doctrine. Thus, defendant's objection to the magistrate judge's discussion of the private search doctrine is **OVERRULED**.

Notably, defendant has not objected to the magistrate judge's ultimate conclusion that law enforcement did not exceed the scope of Facebook's private search. Accordingly, because this conclusion is unchallenged, and the Court agrees with the magistrate judge's conclusion, the Court will adopt the magistrate judge's recommendation as to the private search doctrine.

### C.  Whether the Delay in Obtaining a Search Warrant was Unreasonable

In his second motion to suppress, defendant argued that the search of his cell phone should be suppressed because the 42-day delay in obtaining a warrant was unreasonable [Doc. 63, p. 28]. Judge Guyton noted that defendant had only a minimal possessory interest in his cell phone during this 42-day period, as he was in custody the entire time [*Id.* at 29]. Judge Guyton also noted that defendant did not request the return or transfer of his phone at any point [*Id.* at 30]. Judge Guyton found that law enforcement proceeded diligently and provided an explanation for the delay in obtaining a search warrant for defendant's cell phone [*Id.* at 32]. Accordingly, Judge Guyton concluded that the 42-day delay was not unreasonable in this case, and defendant is not entitled to suppression on this ground [*Id.* at 33].

Defendant objects to the magistrate judge's conclusion that the delay in obtaining a warrant for his cell phone was not unreasonable [Doc. 64, p. 7]. He contends that the fact that he was in custody, and not allowed access to his cell phone, is irrelevant because the

16

cell phone was still his personal property and was in his possession until his arrest [*Id*. at 8]. Defendant further argues that the fact that he did not request the return or transfer of his phone should not be a relevant factor, because, otherwise, every criminal defendant would be placed in a position where he or she must request the return of their personal property post-arrest or waive any argument that the delay between seizure and obtaining a warrant is unreasonable [*Id*.]. Defendant also contends that none of the facts that Officer Williams testified to have any bearing on the probable cause to search the phone [*Id*. at 9]. Accordingly, there should not have been a delay in obtaining a warrant just because Officer Williams conducted more investigation and was busy with other job duties [*Id*. at 10].

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The central requirement of the Fourth Amendment is reasonableness. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). A seizure that is "lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). "A temporary warrantless seizure supported by probable cause is reasonable as long as 'the police diligently obtained a warrant in a reasonable period of time.'" *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (quoting *McArthur*, 531 U.S. at 334).

"To determine if an extended seizure violates the Fourth Amendment, [the court] balance[s] the government's interest in the seizure against the individual's possessory interest in the object seized." *United States v. Pratt*, 915 F.3d 266, 271 (4th Cir. 2019) (citing *United States v. Place*, 462 U.S. 696 (1983); *United States v. Van Leeuwen*, 397 U.S. 249 252–53 (1970)); *see also Laist*, 702 F.3d at 613. "A strong government interest can justify an extended seizure," but "if the individual's interest outweighs the government's, an extended seizure may be unreasonable." *Id.* In making this determination, a court should look at the totality of the circumstances. *Laist*, 702 F.3d at 613. However, courts have identified several relevant factors to consider, including: (1) the significance of the interference with the person's possessory interest; (2) the duration of the delay; (3) whether or not the person consented to the seizure; and (4) the government's legitimate interest in holding the property as evidence. *Id.* at 613–14. Courts also must consider whether police acted diligently, which includes considerations of: (1) the nature and complexity of the investigation and whether overriding circumstances necessitated the diversion of law enforcement personnel; (2) the quality of the warrant application and the time the court would expect to be necessary to prepare such; and (3) any other evidence regarding law enforcement's diligence. *Id.* at 614.

It is clear from this case law that, in evaluating whether the delay in obtaining a warrant was unreasonable, and therefore violated the Fourth Amendment, the Court must, viewing the totality of the circumstances, balance defendant's possessory interests in the seized cell phone against the government's interest in seizing the cell phone as evidence.

18

Defendant first appears to contend that his incarceration should have no impact on his possessory interest in the cell phone, for purposes of this analysis [Doc. 64, p. 8]. However, defendant cites no legal precedent for this argument. To the contrary, a plurality of the Supreme Court has held that, when defendants were in custody, "[t]he actual interference with their possessory interests in [an] apartment and its contents was . . . virtually nonexistent." *Segura v. United States*, 468 U.S. 796, 812–13 (1984) (plurality op.). The Court agrees with Judge Guyton's conclusion that defendant had only a limited possessory interest in his cell phone while he was in custody, as he was not at liberty to personally take possession of the cell phone.

Additionally, the Court agrees with Judge Guyton that defendant's failure to request the return or transfer of his phone is a relevant consideration when evaluating the totality of the circumstances. Contrary to defendant's assertion that considering this factor would force every criminal defendant to request the return of their personal property post-arrest or waive any argument that delay in obtaining a search warrant was unreasonable [Doc. 64, p. 8], nothing in the R&R suggests that defendant has *waived* his argument by not requesting the return or transfer of his cell phone. The R&R simply discusses defendant's failure to make such request as one of many relevant factors to consider. The Court agrees and finds that defendant's failure to request that his cell phone be released to a friend, family member, or his attorney is a relevant consideration as to defendant's possessory

19

interest in the cell phone, as balanced against the government's interest in the continued seizure of the cell phone.[6]

The crux of defendant's objection to the magistrate judge's finding on this issue is his contention that Judge Guyton's reliance on Officer Williams's testimony regarding the steps that he took to investigate this case after the seizure of the cell phone, but before applying for a search warrant, led to the erroneous conclusion that the delay was reasonable [Doc. 63, pp. 8–10]. Defendant contends that Officer Williams's further investigative steps are irrelevant to the analysis here, as none of the information uncovered in that investigation was included in the search warrant affidavit, and Officer Williams had probable cause to search the cell phone at the time it was seized [*Id.* at 9]. However, the Court finds that law enforcement's diligence in investigating this matter is a relevant consideration. *See Laist*, 702 F.3d at 613 (finding that a temporary warrantless seizure is reasonable if police diligently obtained a warrant in a reasonable period of time, and discussing factors to be consider in determining whether police acted diligently (citing *McArthur*, 531 U.S. at 334)).

---

[6] Although the Court finds that the magistrate judge appropriately considered defendant's failure to request return or transfer of his cell phone as a factor in the balancing analysis, the Court nonetheless notes that it agrees with the magistrate judge's ultimate conclusion, that the delay here was not unreasonable, even without considering defendant's failure to request the return or transfer of his cell phone. In other words, although the Court finds that this was an appropriate consideration, the consideration is not dispositive.

20

Officer Williams's testimony at the suppression hearing, as summarized comprehensively in the R&R[7] [Doc. 63, pp. 4–15], indicates that, from his receipt of the CyberTip on October 16, 2018, until his completion of the search warrant affidavit on November 27, 2018, he spent nearly every work day investigating this matter, including interviewing the victim and family members, discussing the case with federal officials, preparing warrants for and reviewing messages on defendant's and the victim's Facebook pages, subpoenaing cell tower information, interviewing defendant's ex-girlfriend, and assisting in interviews of two other potential victims. Although Officer Williams testified that he worked on a few unrelated matters during this time, including attending an out-of-town training event, and assisting in the execution of an unrelated search warrant, the Court does not find that these occasional deviations from investigating the instant case indicate that Officer Williams was less than diligent in investigating this matter. This is not a circumstance where law enforcement seized property and simply ignored the case while attending to other matters. Law enforcement continued to actively and diligently investigate between the time that it seized defendant's cell phone and obtained a search warrant for that cell phone. Accordingly, the Court does not find that the delay was unreasonable.

Further, the Court does not find defendant's suggestion, that law enforcement should have applied for the search warrant the moment it believed that probable cause

_____

[7] Because there are no objections to the magistrate judge's summary of Officer Williams's testimony, the Court finds it appropriate to adopt that summary for purposes of this order [Doc. 63, pp. 4–15].

existed, compelling. If the Court were to adopt defendant's position, law enforcement would be forced to attempt to obtain a search warrant with only the most skeletal amount of evidence that it believes could possibly constitute probable cause, to avoid potential suppression of evidence on the ground that it unreasonably delayed in applying for such warrant. This, in turn, could potentially lead to an increase in inadvertent violations of the Fourth Amendment rights of citizens for the sake of expediency. The Fourth Amendment does not require this result. The Court does not find that allowing further diligent investigation of a case, beyond the point at which law enforcement believes that it may have probable cause to search, would render the continued warrantless seizure of property inherently unreasonable.

Ultimately, balancing defendant's limited possessory interest in his cell phone, while he was in custody, with the government's strong interest in seizing the cell phone for purposes of investigating this criminal case, the Court agrees with Judge Guyton's conclusion that law enforcement's delay in obtaining the search warrant in this case was not unreasonable. Accordingly, defendant's third objection is **OVERRULED**.

## IV.    Conclusion

Upon a careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in the R&R are correct. Thus, defendant's objections [Doc. 64] are **OVERRULED**. The Court **ACCEPTS in whole** the R&R [Doc. 63] and

incorporates it into this Memorandum Opinion and Order. The Court hereby **DENIES**

defendant's motions to suppress [Docs. 47, 48].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE